UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

PABLO FRANCO
Aka Casper,

          Petitioner-Defendant,

v.

UNITED STATES OF AMERICA,

          Respondent-Plaintiff.

Case No.:  12CR0236-GPC
        19cv493-GPC

**ORDER DENYING PETITIONER'S MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE PURSUANT TO 28 U.S.C. § 2255**

**[DKT. NO. 2195.]**

Petitioner, Pablo Franco, ("Petitioner") a federal prisoner proceeding pro se, filed a motion to vacate his federal sentence pursuant to 28 U.S.C. § 2255 ("§ 2255"), alleging ineffective assistance of counsel and a *Brady*[1] violation. (Dkt. No. 2195.) The United States of America ("the Government") opposed Petitioner's motion under § 2255, alleging that Petitioner's § 2255 Petition is untimely, raises matters that could have been raised on direct appeal, and fails on the merits. (Dkt. No. 2277.) Petitioner did not file a reply.

---

[1] *Brady v. Maryland*, 373 U.S. 83 (1963).

1

For the following reasons, the Court **DENIES** Petitioner's § 2255 Petition and **DENIES** a certificate of appealability.

## I.    BACKGROUND

In 2010, a joint federal and state task force undertook an investigation of extortion and drug trafficking by the Mexican Mafia and local street gangs in San Diego County. (Dkt. No. 2101 at 9[2].) On January 19, 2012, an indictment was filed charging forty alleged Mafia members and associates with engaging in a racketeering conspiracy in violation of RICO, under 18 U.S.C. § 1962(d). (Dkt. No. 1.) The indictment alleged that Petitioner is a high-level associate of the Mexican Mafia, who has "responsibility over the distribution of narcotics and the 'taxation' of individuals operating within the geographic areas controlled by the Mexican Mafia." (*Id.* at 10.) The Mexican Mafia exerts control over many Hispanic street gangs and requires them to pay a "tax" on a regular basis. (*Id.* at 5.) By paying the tax, the street gang is permitted to "have influence over, and to traffic in, narcotics in their neighborhoods and territories." (*Id.*) At all times relevant to the indictment, Petitioner was incarcerated at Donovan State Prison. (*Id.* at 10.) While incarcerated, Petitioner was responsible for collecting "taxes" and sending the proceeds to Mexican Mafia members. (*Id.*) The indictment further contended that Petitioner has the authority as a high-level Mexican Mafia associate to order the assault of individuals who fail to pay the tax or otherwise fail to comply with the Mexican Mafia. (*Id.*)

After some of the indicted defendants entered guilty pleas, two superseding indictments were filed. (Dkt. No. 2101 at 9.) Eight defendants, including Petitioner, opted for trial. (*Id.*)  At trial, the evidence revealed that Petitioner was a high-ranking member of the Varrio Fallbrook Locos gang as well as an associate of the Mexican Mafia. *United States v. Barragan*, 871 F.3d 689, 697 (9th Cir. 2017). Additionally, Alfonso Mata testified

---

[2] Page numbers are based on the CM/ECF pagination.

against Petitioner and explained that at the direction of Petitioner, he helped collect taxes from drug-dealing inmates, sent tax proceeds to Petitioner's mother, and then the proceeds were forwarded to a Mafia member. (*Id.* at 698.) A bank statement confirmed that once Petitioner's mother received the proceeds from Mata, Petitioner's mother and sister forwarded the money to a Mafia member. (*Id.*)

After a six-week trial, on October 2, 2013, Petitioner was convicted of conspiring to participate in a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(d). (Dkt. No. 1589.) Petitioner was sentenced to a term of 240 months and is to be served concurrently with the Superior Court of California, County of San Diego, Case #SCN250257. (*Id.*)

On September 8, 2017, the Ninth Circuit Court of Appeals affirmed Petitioner's conviction and sentence of 240 months. *Barragan*, 871 F.3d at 696. Ten days later, Petitioner's motion to extend the due date for filing a petition for rehearing was granted and the due date was extended to October 23, 2017. (Dkt. No. 2092.) The petition for a panel rehearing was denied on November 27, 2017. (Dkt. No. 2096.)

Within three months, Petitioner filed for a petition for writ of certiorari to the United States Supreme Court on February 22, 2018. *Franco v. United States*, Case No. 13-50531, Dkt. No. 105 (9th Cir. Nov. 27, 2017). Subsequently, on April 16, 2018, the United States Supreme Court denied Petitioner's petition for writ of certiorari. *Franco v. United States*, 138 S. Ct. 1565 (Apr. 16, 2018). Within a year, on March 12, 2019, Petitioner filed the present motion to vacate under 28 U.S.C. § 2255 alleging ineffective assistance of counsel and a *Brady* violation. (Dkt. No. 2195.) The Government filed a motion in opposition on June 14, 2020 urging the Court to deny Petitioner's motion. (Dkt. No. 2277.) Petitioner did not file a reply.

## II.   LEGAL STANDARD

Section 2255 authorizes this Court to "vacate, set aside, or correct the sentence" of a federal prisoner on "the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). To warrant relief under § 2255, a prisoner must allege a constitutional or jurisdictional error, or a "fundamental defect which inherently results in a complete miscarriage of justice [or] an omission inconsistent with the rudimentary demands of fair procedure." *United States v. Timmreck*, 441 U.S. 780, 783 (1979) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)).

## III.   DISCUSSION

For the following reasons, the Court finds that Petitioner's claims do not warrant federal relief under § 2255.

### A.   Statute of Limitations

The Government alleges that the Court should deny Petitioner relief under § 2255 because the petition was filed over one year after the Ninth Circuit affirmed the Petitioner's conviction and sentence. (Dkt. No. 2277.) Section 2255 provides that "a one-year period of limitation applies under § 2255 and runs from the latest of the date on which the judgment of the conviction becomes final." 28 U.S.C. § 2255(f)(1). For the purpose of starting the clock on § 2255's one-year limitation period, finality attaches when the Supreme Court "affirms a conviction on the merits on direct review or denies a petition for writ of certiorari, or when the time for filing a certiorari petition expires." *Clay v. United States*, 537 U.S. 522, 527 (2003).

Here, the Government's motion opposing Petitioner's § 2255 motion does not account for the entirety of the relevant procedural history. After the Ninth Circuit affirmed

12CR0236-GPC
19cv493-GPC

Petitioner's conviction and sentence on September 8, 2017, the Ninth Circuit further reviewed and denied Petitioner's motion for a panel rehearing on November 27, 2017. (Dkt. No. 2096.) Moreover, the Government fails to acknowledge that on February 22, 2018, Petitioner filed a petition for writ of certiorari to the Supreme Court which was denied on April 16, 2018. *Franco v. United States*, Case No. 13-50531, Dkt. No. 105 (9th Cir. Nov. 27, 2017; *Franco v. United States*, 138 S. Ct. 1565 (Apr. 16, 2018).

As such, the clock on Petitioner's one-year time limitation began on April 16, 2018, when the Supreme Court denied Petitioner a writ of certiorari. *See Clay*, 537 U.S. at 527. Because Petitioner filed his § 2255 motion within the one-year time limitation on March 12, 2019, the petition is timely.

**B.    Procedural Default**

Next, the Government alleges that even if Petitioner filed a timely motion, Petitioner procedurally defaulted both his ineffective assistance of counsel and *Brady* claims by not raising either claim on direct appeal. (Dkt. No. 2277.) Generally, claims not raised by a convicted federal criminal defendant on direct appeal is procedurally defaulted and may not be brought on collateral review under § 2255 without a showing of cause and prejudice or actual innocence in response to the default. *Bousley v. United States*, 523 U.S. 614, 622 (1998). However, "an ineffective-assistance-of-counsel claim may be brought in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal." *Massaro v. United States,* 538 U.S. 500, 504 (2003).

In light of *Massaro*, where the Supreme Court held that ineffective assistance of counsel claims are not procedurally defaulted if not raised on direct review, the Court may consider the merits of Petitioner's ineffective assistance of counsel claim.  However, with respect to Petitioner's alleged *Brady* violation, the Court must determine whether Petitioner provided a sufficient showing of cause and prejudice or actual innocence to overcome his procedurally defaulted *Brady* violation claim. *Bousley*, 425 U.S. at 622.

12CR0236-GPC
19cv493-GPC

1

**C.      Ineffective Assistance of Counsel**

2          In his claim for ineffective assistance of counsel, Petitioner presents six arguments

3    that his trial counsel: 1) failed to investigate the recording devices; 2) failed to investigate

4    cell phone evidence; 3) failed to withdraw a motion to dismiss based on a defense strategy

5    that Petitioner disagreed with; 4) committed sentencing errors; and 5) failed to provide the

6    court with information as to how the law is applied to concurrent federal and state court

7    sentences. (Dkt. No. 2195 at 12-14.) The Government contends that Petitioner's trial

8    counsel acted objectively reasonable and any failure to raise weak arguments to focus on

9    stronger arguments did not prejudice the petitioner. (Dkt. No. 2277 at 5.)

10         To prevail on an ineffective assistance of counsel claim ("IAC"), Petitioner must

11   show both (1) deficient performance under an objective standard of reasonableness and (2)

12   prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To demonstrate deficient

13   performance, "[t]he challenger's burden is to show 'that counsel made errors so serious

14   that counsel was not functioning as the "counsel" guaranteed to the defendant by the Sixth

15   Amendment.'" *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (quoting *Strickland*, 466

16   U.S. at 687). To demonstrate prejudice, the petitioner must show that "but for counsel's

17   unprofessional errors," there is a reasonable probability "the result of the proceeding would

18   have been different." *Strickland*, 466 U.S. at 694 ("A reasonable probability is a probability

19   sufficient to undermine confidence in the outcome."); *Richter,* 562 U.S. at 112 ("The

20   likelihood of a different result must be substantial, not just conceivable."). A petitioner

21   must allege specific facts—not conclusory allegations—to warrant relief.  *See James v.*

22   *Borg,* 24 F.3d 20, 26 (9th Cir. 1994) ("Conclusory allegations of [IAC] which are not

23   supported by a statement of specific facts do not warrant habeas relief."). Furthermore,

24   reviewing courts must apply a "strong presumption" that "counsel's conduct falls within

25   the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689*; see*

26   *Cullen v. Pinholster*, 563 U.S. 170, 196 (2011) (courts must give "attorneys the benefit of

27

28

12CR0236-GPC
19cv493-GPC

the doubt" for proceeding as they did). Lastly, a court need not first determine whether counsel's performance was deficient before considering the second prong of the *Strickland* test. *See Smith v. Robbins*, 528 U.S. 259, 286 n.14 (2000) ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of prejudice, . . . that course should be followed.") (quoting *Strickland*, 466 U.S. at 697).

### 1.    Failure to Investigate the Recording Devices

Petitioner alleges that he received ineffective assistance of counsel when his trial counsel did not pursue exculpatory evidence contained in recording devices, which recorded all in-cell conversations. (Dkt. No. 2195 at 12-13.) In response, the Government argues it is objectively reasonable that Petitioner's trial counsel would choose not to subpoena the recordings because "it likely would have buttressed the case that Petitioner was a high-ranking Mexican Mafia associate." (Dkt. No. 2277 at 9 n.3.)

Counsel has a duty to "investigate and introduce into evidence records that demonstrate factual innocence, or that raise sufficient doubt on that question to undermine confidence in the verdict." *Bragg v. Galaza,* 242 F.3d 1082, 1088 (9th Cir. 2001). However, a petitioner's habeas claim of his counsel's failure to investigate cannot prevail if the claim is conclusory, and "[a]bsent an account of what beneficial evidence investigation into any of these issues would have turned up, [the petitioner] cannot meet the prejudice prong of the *Strickland* test." *Hendricks v. Calderon,* 70 F.3d 1032, 1042 (9th Cir. 1995). Furthermore, when evaluating an ineffective assistance of counsel claim based on the duty to investigate, the court must consider the claim "in light of the strength of the government's case." *Eggleston v. United States*, 798 F.2d 374, 376 (9th Cir. 1986).

Here, Petitioner has not demonstrated that further investigation into the in-cell recordings would have benefited him. To show prejudice, Petitioner must provide a showing that further investigation would have revealed favorable evidence. *See Hendricks*, 17 F.3d at 1042. Because Petitioner alleges that the purpose of the surveillance recordings

1    was to reveal what Petitioner himself said inside his jail cell, Petitioner could have provided

2    a showing as to why the recordings would have resulted in a more favorable outcome.

3    Instead, Petitioner only argues that the "key pieces of evidence would have either convicted

4    me or proven my innocence in my own words." (Dkt. No. 2196 at 15.) Thus, Petitioner

5    does not argue that the outcome of the trial would have necessarily been different even if

6    the recordings were utilized by defense counsel at trial. (*See id.*) As such, Petitioner's claim

7    that the recordings are exculpatory is a conclusory statement and Petitioner failed to state

8    a claim with sufficient specificity that would allow the Court to evaluate his claim. *See*

9    *James* 24 F.3d at 26.

10          Moreover, the evidence against Petitioner was overwhelming at trial. As explicated

11   by the Ninth Circuit on direct appeal, "[t]he evidence against Barragan, Franco, and

12   Gutierrez was overwhelming, and they do not argue otherwise." *Barragan*, 871 F.3d at

13   708. For example, "[a] fellow inmate, Alfonso Mata, testified that he helped Franco collect

14   taxes from drug-dealing inmates on behalf of the Mafia." *Id.* at 697-698. Receipts also

15   confirmed that Mata forwarded tax proceeds to Petitioner's mother. *Id.* Additionally,

16   "[intercepted phone calls, taped conversations, and a bank statement confirmed that

17   [Petitioner's] mother and sister then forwarded the money to a Mafia member." *Id.* In an

18   intercepted conversation, Petitioner's mother stated that Petitioner's sister had $600 for a

19   Mafia member. *Id.* at n.5.  This was supported by evidence of a bank statement, which

20   showed a $600 deposit in the Mafia member's bank account the next day. *Id.* Against the

21   backdrop of the strength of the Government's case, which the court must consider in a

22   claim of an alleged failure to investigate, *Eggleston,* 798 F.2d at 376, Petitioner fails to

23   show that he was prejudiced. Accordingly, the Court finds that Petitioner's trial counsel

24   did not render ineffective assistance of counsel because the claim is conclusory and fails

25   to provide a showing of prejudice. *See Patrick v. United States*, Civil No. 08–CV–732–L,

26   Criminal No. 02–CR–1714–L, 2008 WL 3861690, at *1 (S.D. Aug. 19, 2008) (denying

27

28

12CR0236-GPC
19cv493-GPC

1    IAC claim for counsel's failure to investigate or present available, material, exculpatory

2    evidence at trial because petition failed to provide any specific facts to support the claim).

3         Therefore, the Court DENIES Petitioner's claim of ineffective assistance of counsel

4    for failing to investigate the recording devices.

5         **2.     Failure to Investigate Cell Phone Evidence**

6         Petitioner argues that he received ineffective assistance of counsel when his attorney

7    did not further inquire about alleged call recordings or photos contained on a smuggled cell

8    phone, which Alfonso Mata turned into officers at Donovan State Prison. (Dkt. No. 2195

9    at 13.) In response, the Government contends that defense counsel had the opportunity to

10   view the evidence at FBI headquarters and the prosecution did not withhold any material

11   evidence because the material did not exist by the time of the instant case. (Dkt. No. 2277

12   at 8.)

13        As discussed earlier, defense counsel has a "duty to make reasonable investigations

14   or to make a reasonable decision that makes particular investigations unnecessary."

15   *Strickland*, 466 U.S. at 691. This includes a duty to "investigate and introduce into evidence

16   records that demonstrate factual innocence, or that raise sufficient doubt on that question

17   to undermine confidence in the verdict", *Bragg*, 242 F.3d at 1088, as well as a "duty to

18   investigate the prosecution's case and to follow up on any exculpatory evidence." *Curiel*

19   *v. Allison*, Case No. CV 10-0301 DDP (AS), 2018 WL 9815624, at *10 (C.D. July 23,

20   2018) (citing *Kimmelman v. Morrison*, 477 U.S. 365, 384-85, 387 (1986) (holding that

21   counsel rendered ineffective assistance by not requesting any discovery) and *Duncan v.*

22   *Ornoski*, 528 F.3d 1222, 1234-35 (9th Cir. 2008)). However, "the duty to investigate and

23   prepare a defense is not limitless, and . . . it does not necessarily require that every

24   conceivable witness be interviewed or that counsel must pursue every path until it bears

25   fruit or until all conceivable hope withers."  *Hamilton v. Ayers*, 583 F.3d 1100, 1129 (9th

26   Cir. 2009).

27

28

12CR0236-GPC
19cv493-GPC

Here, Petitioner's trial counsel satisfied his duty to conduct an objectively reasonable investigation and secured information in the possession of the prosecution. Prior to trial, the Government made available to the defense the one cell phone found in Mata's television. (Dkt. No. 1162 at 65.) The government opposition to Defendant's motion states, "the Government will make arrangements for defense counsel to view the physical evidence on either July 17, 2013 or July 31, 2013, at FBI Headquarters." (*Id.*) While defense counsel admittedly had not viewed the contents of the cell phone by September 19, 2013, (Dkt. No. 1698 at 21), Petitioner acknowledges that his trial counsel traveled to Donovan State Prison to retrieve evidence and was shown the blank cell phone containing no exculpatory evidence. (Dkt. No. 2195 at 13.)

While Petitioner urges that his counsel should have further investigated and inquired about the chain of custody of the blank cell phone, the Court finds that Petitioner's trial counsel conducted a reasonable investigation and provided effective assistance of counsel because not only did counsel follow up on potentially exculpatory evidence and make arrangements to view the physical evidence, counsel also forcefully advocated on Petitioner's behalf when he objected to the testimony of Mata on the grounds that he did not receive *Brady* material prior to trial. (*See* Dkt. No. 1698 at 18.) Specifically, Petitioner's trial counsel stated:

> MR. MORRELL: . . . There was information given to the officers at Donovan, which I believe the Government has access to them, which it should be Brady material. There's statements made by my client, supposedly, in kites and other forms of information. There was a phone call supposedly that he made. I need to know from what phone to what phone. None of that information has been made available, Your Honor. I would object to the testimony of Mr. Mata as to those things unsupported by the evidence, and the evidence does exist.

(Dkt. No. 1698 at 17-18.) Once Petitioner's trial counsel brought the issue to the court's attention, the court inquired about the alleged Brady material, and Petitioner's counsel arranged to interview Mata's handler while he was at Donovan State Prison. (*Id.* at 26.)

Thus, trial counsel satisfied his duty to investigate the government's case and follow up on exculpatory evidence when he traveled to Donovan State Prison to further investigate any potential exculpatory evidence. *See Kimmelman,* 477 U.S. at 387.

Assuming, *arguendo,* that counsel failed to conduct a reasonable investigation into potential cell phone evidence, Petitioner's claim also fails to state with specificity how the evidence would have impacted the outcome of the trial. *See James,* 24 F.3d at 26. When referring to the kites, photos of the handwritten notes on a cell phone, and the recording devices, Petitioner merely states that the "key pieces of evidence would have either convicted me or proven my innocence in my own words and written in my own hand." (Dkt. No. 2195 at 15.) Here, Petitioner does not necessarily allege that the outcome would have been different, but rather would have preferred that the cell phone evidence was presented at trial. Without any specific showing of how the evidence would have benefited the outcome of the trial, Petitioner's claim is a conclusory allegation that fails to provide sufficient specificity to allow the Court to evaluate his claim. *See James,* 24 F.3d at 26. As such, Petitioner's claim also fails under *Strickland* because without a showing of a potentially different outcome at trial, Petitioner's ineffective assistance of counsel claim is without merit. *Strickland*, 466 U.S. at 694.

Therefore, for the foregoing reasons, the Court DENIES Petitioner's claim of ineffective assistance of counsel with respect to the cell phone evidence.

### 3.  Filing a Motion Contrary to Petitioner's Understanding and Strategy

Next, Petitioner alleges that his trial counsel was ineffective because he filed a motion to dismiss on June 13, 2013, (Dkt. No. 1147), that was contrary to his understanding of the contents of the motion. (Dkt. No. 2195 at 13.) Petitioner explains that he later wrote a letter to the court requesting that the motion be withdrawn, (Dkt. No. 1232), and that letter was later used against him in the Government's sentencing memorandum. (Dkt. No. 1504 at 16.)  Petitioner's letter explained that contrary to defense counsel's motion, he was

12CR0236-GPC
19cv-493-GPC

not a victim and did not acknowledge the existence of any Mafia. (Dkt. No. 1232.) He further stated the motion was filed without his consent. (*Id.*) On August 2, 2013, defense counsel filed a notice of withdrawal of his motion to dismiss based on Petitioner's letter. (Dkt. No. 1259.)

According to Petitioner, the Government used the letter to demonstrate Petitioner's aspirations to become a member of the Mexican Mafia, which he denies as true. (Dkt. No. 2195 at 13.) Respondent claims that defense counsel was not ineffective for not engaging in arguments that strain credibility. (Dkt. No. 2277.) According to the sentencing memorandum, because Franco was close to becoming a member of the Mexican Mafia, (Dkt. No. 1504-2, Ex. D), and desired to become one, he could not be seen as a victim as argued in the motion to dismiss and it was a violation of the Enterprise to admit the existence of the Mexican Mafia, which was acknowledged in the motion to dismiss. (Dkt. No. 1504 at 16.) Therefore, the letter supported the Government's argument that Petitioner continued to desire to become a Mafia member despite the criminal case against him. (Dkt. No. 2195.)

First, if Petitioner is alleging that but for counsel's action of filing a motion contrary to an agreeable defense strategy, he would not have written a letter to the court that was ultimately used against him at sentencing, Petitioner's claim of ineffective assistance of counsel fails because "appointed counsel, and not his client, is in charge of the choice of trial tactics and the theory of defenses." *See United States v. Wadsworth*, 830 F.2d 1500, 1509 (1987). Nonetheless, trial counsel withdrew the motion to dismiss and Petitioner does not allege that he did not agree with the defense strategy his trial counsel put forth at trial. (Dkt. No. 1259.)

Next, even though the Government used the letter against Petitioner in the sentencing memorandum, there is no evidence that the use of the letter gives rise to a "reasonable probability sufficient to undermine the confidence in the outcome." *See*

12CR0236-GPC
19cv493-GPC

1    *Richter,* 562 U.S. at 112. At the sentencing hearing, neither the Government nor the court

2    mentioned the letter. (*See* Dkt. No. 1696.) Whether Petitioner aspired to become or

3    continue to as a member of the Mafia was not at issue. (*See id.*) Instead, the court was

4    primarily concerned with whether Petitioner's prior convictions and conduct related to the

5    RICO conspiracy qualified Petitioner as a Career Offender for sentencing purposes under

6    U.S.S.G. § 4B1.1. (*See id.*) Making no mention of the letter throughout the entirety of the

7    sentencing hearing, the court stated, "there is evidence to support Mata's testimony, and

8    he was believable . . . and certainly all these arguments were made to the jury, and they

9    were convinced that Mr. Franco was guilty of the RICO offense." (*Id.* at 25.)

10        Moreover, on direct review, the Ninth Circuit also noted the magnitude of evidence

11   the Government presented against Petitioner at trial. *See Barragan*, 871 F.3d at 697-698.

12   For example, Mata testified against Petitioner at trial, stating that he helped Petitioner

13   "collect taxes from drug dealing inmates on behalf of the Mafia" and "[a]t the direction

14   Petitioner, Mata sent the tax proceeds to [Petitioner's] mother, who then forwarded the

15   money to a Mafia member." (*Id.*) The Government also presented wiretap evidence and

16   bank statements at trial, which "confirmed that [Petitioner's] mother and sister then

17   forwarded the money to a Mafia member. (*Id.*)

18        Thus, both the sentencing hearing transcript and the Ninth Circuit opinion evidence

19   that the letter, which was later used by the Government in the sentencing memorandum to

20   further argue that Petitioner desired to become a Mafia member, was inconsequential

21   against the backdrop of evidence presented against Petitioner at trial. In addition, Petitioner

22   does not allege that the letter was used against him at trial. Consequently, by the time of

23   sentencing after the jury trial, Petitioner's letter did not provide any probative value

24   because the evidence presented at trial itself revealed that Petitioner was involved with the

25   Mexican Mafia. Even if counsel improperly filed a motion contrary to a defense strategy

26   which Petitioner disagreed with, counsel nonetheless did not render ineffective assistance

27

28

1  of counsel because Petitioner did not suffer prejudice under *Strickland* when the letter was

2  incorporated in the Government's sentencing memorandum. *See Strickland*, 466 U.S. at

3  694.

4        Therefore, for the foregoing reasons, the Court DENIES Petitioner's claim of

5  ineffective assistance of counsel for filing a motion contrary to Petitioner's understanding

6  and his defense strategy.

7        **4.    Sentencing Errors**

8        First, Petitioner contends that his sentence was improperly elevated because his

9  attorney failed to correct the Government's sentencing memorandum, which alleged that

10  Petitioner's 2009 conviction was for threatening a witness in a gang homicide case, rather

11  than conspiracy to dissuade a witness in a case involving a stolen vehicle. (Dkt. No. 2195

12  at 13-14.) The Government concedes that the defendant in the case, which Petitioner was

13  attempting to influence, was facing "75 to life" and had not been charged with murder.

14  (Dkt. No. 2277 at 7.) However, the Government urges that the focus at Franco's sentencing

15  was on Petitioner's actions in attempting to dissuade a witness, rather than what the charges

16  were against the defendant he was trying to help. (*Id.*)

17        Because Petitioner's trial counsel forcefully argued at sentencing that Petitioner's

18  2009 conviction does not qualify as a crime of violence, the Court finds that Petitioner did

19  not receive ineffective assistance of counsel with respect to the impact of his 2009

20  conviction on his sentence. (*See* Dkt. No. 1696.) At sentencing, counsel firmly advocated

21  for his client and attacked the classification of Petitioner's 2009 conviction as a crime of

22  violence, as it was based on a stipulation to a preliminary hearing transcript having to do

23  with a different defendant in that case. (*Id.* at 12-13.) Under *Strickland*, the Court finds that

24  trial counsel's representation fell well within the "wide range of reasonable professional

25  assistance." *Strickland*, 466 U.S. at 689. As such, the Court denies Petitioner's ineffective

26

27

28

12CR0236-GPC
19cv493-GPC

assistance of counsel claim with respect to trial counsel's alleged failure to rebut the qualification of Petitioner's 2009 conviction as a crime of violence for sentencing purposes.

Second, Petitioner alleges that because his attorney improperly accepted allegations that Petitioner verbally threatened cooperating witness Everst Cruz, Petitioner received a higher sentence. (Dkt. No. 2195 at 14.) Respondent notes that there were two threats.  One was a threat of harm to Cruz and his family if Cruz did not testify according to Franco's direction.  (Dkt. No. 1504-2 at 2.) Second, there was a physical beating of Cruz in the Vista Detention Facility in 2011.

As to the physical beating, Petitioner's trial counsel specifically argued that Everst Cruz's testimony did not provide evidence of Petitioner's involvement in the acts of violence against him, including the threats and physical violence against him.  (Dkt. No. 1516 at 2.) Specifically, in the sentencing brief, Petitioner's trial counsel argued:

> [T]he government called Everst Cruz to testify, and no evidence of Mr. Franco's involvement in the acts of violence against him was provided. The government's attempted reliance on hearsay police reports and unverified points and authorities prepared by counsel for the government is inadequate and lacks sufficient reliability to establish these issues. The government's request under various groupings to enhance the sentence for violence, threats, bodily injury, or obstruction of justice must be denied.

(Dkt. No. 1516 at 11.)  Moreover, at the sentencing hearing, defense counsel vigorously objected to the use of the beating of Everst Cruz for purposes of sentencing.  (Dkt. No. 1696 at 21:19-22 ("None of them mention this guy, Everst Cruz, the beating of Everst Cruz. Nowhere does it mention that he ordered the beating of this guy.  They admit that Rudy Espudo ordered the beating of Everst Cruz.") He further argued "[t]here was no proof before the court, before the jury, that he had ordered that, number one, and number two, his means of communication were so limited, how could he have communicated with Francisco Gutierrez to beat up this guy?  I just don't understand how the government is bootstrapping this." (Dkt. No. 1696 at 21:5-22:5.)  In response to the Government's

argument and proof, defense counsel further persisted arguing, "Forgive me, your honor, there's evidence that he did communicate with his mother, but in those conversation recorded in video and in audio, there's no mention about these instances of violence." (*Id.* at 22:22-25.) The record belies Petitioner's argument that defense counsel accepted the allegations regarding Cruz's beating.

Furthermore, even if the Court characterizes trial counsel's argument as a concession, on direct review the Ninth Circuit denied Petitioner's argument that the district court erred in in attributing to him predicate acts of which he was acquitted of or not formally charged with. *Barragan*, 871 F.3d at 716. Therefore, had trial counsel improperly conceded that Petitioner was formally charged with threatening Everst Cruz, Petitioner would not have suffered from prejudice because the "district court may consider uncharged, relevant conduct" at sentencing." *Id.* (quoting *United States v. Ballew*, 40 F.3d 936, 943 (8th Cir. 1994)).

Therefore, for the foregoing reasons, the Court DENIES Petitioner's claim of ineffective assistance of counsel as to the alleged sentencing errors.

### 5. Failure to Seek a Concurrent Sentence

Lastly, Petitioner argues that his counsel provided the court with improper information as to how the law is applied to concurrent federal and state court sentences and as a result, he received a higher sentence. (Dkt. No. 2195 at 14.) It appears that Petitioner is arguing that his sentence should have run concurrently with his state court sentence. (*See id.*)

Petitioner's argument is without merit. In fact, over the objection of the Government arguing that a concurrent sentence was inappropriate, and trial counsel's forceful arguments on behalf of Petitioner at sentencing, Petitioner was sentenced to 240 months, to be served concurrently with the Superior Court of California, County of San Diego, Case # SCN250257. (Dkt. No. 1589 at 2; Dkt. No. 1696.) Petitioner does not allege in his § 2255

Petition that he is not receiving the benefit of a concurrent sentence. (*See* Dkt. No. 2195.) The Court DENIES the ineffective assistance of counsel claim on his concurrent sentence.

Accordingly, in sum, the Court DENIES Petitioner's ineffective assistance of counsel claim under § 2255.

### D. *Brady* Violation

Petitioner contends that the Government withheld two forms of exculpatory evidence: (1) photos of handwritten notes, also known as "kites," taken on an illegal cell phone turned over to Donovan State Prison and (2) recordings of in-cell and cross-cell conversations from recording devices placed in Petitioner's jail cell and air vent. (Dkt. No. 2195 at 14-17.) The Government argues that Petitioner's alleged *Brady* violation claim is procedurally barred because Petitioner did not raise the claim on direct appeal. (Dkt. No. 2277.) Further, the Government alleges that even if the *Brady* claim is not procedurally barred, Petitioner's claim fails on the merits because (1) the relevant cell phone with alleged photos of handwritten notes was made available to defense counsel (2) the Government did not have possession of any of the jail cell recordings, and (3) Petitioner knew about the evidence yet failed to seek reasonably available means to obtain the evidence. (*Id.* at 8-9.)

A prosecutor's failure to disclose favorable evidence to an accused "violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady,* 373 U.S. at 87. Evidence is material if there is a reasonable probability that the outcome of the trial would have been different if the evidence had been disclosed. *United States v. Bagley*, 473 U.S. 667, 682 (1985). However, "the mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish "materiality" in the constitutional sense." *United States v. Agurs*, 427 U.S. 97, 110 (1976). To establish that the Government's failure to turn over evidence violates *Brady*, Petitioner must

12CR0236-GPC
19cv493-GPC

demonstrate (1) the evidence was suppressed by the government either willfully or inadvertently; (2) the evidence was favorable to the accused because it was either exculpatory or impeaching; and (3) prejudice resulted from the failure to disclose. *See Strickler v. Greene,* 527 U.S. 263, 280-281 (1999).

### 1.    Procedural Default

Petitioner's claim fails because he has not provided a showing of sufficient cause and prejudice to overcome procedural default. Because Petitioner did not raise the claim on direct review, Petitioner must demonstrate either "cause" and actual "prejudice" to overcome procedural default. *See Bousley,* 523 U.S at 622.  477 U.S. 478, 485 (1986). While ineffective assistance of counsel can constitute cause for procedural default in some instances, *Martinez v. Ryan,* 566 U.S. 1, 11 (2012) ("an attorney's errors during an appeal on direct review may provide cause to excuse a procedural default; for if the attorney appointed by the State to pursue the direct appeal is ineffective, the prisoner has been denied fair process and the opportunity to comply with the State's procedures and obtain an adjudication on the merits of his claims"), Petitioner only provides the Court with reasons why his *trial* counsel provided ineffective assistance of counsel. (*See* Dkt. No. 2195.) If ineffective assistance of counsel *caused* Petitioner to procedurally default his *Brady* violation claim, it follows that Petitioner must show that his *appellate* counsel's deficient representation was the reason Petitioner defaulted his claim. Here, Petitioner does not allege that his appellate counsel caused the defaulted claim. Moreover, Petitioner has not shown prejudice to overcome the default.

Another avenue § 2255 movants can overcome procedural error, is by a showing of actual innocence. *Bousley*, 523 U.S. at 623. "To establish actual innocence, petitioner must demonstrate that, 'in light of all evidence, it is more likely than not that no reasonable juror would have convicted him.'" *Id. (*quoting *Schlup v. Delo*, 513 U.S. 298, 327-328 (1995)). Here, Petitioner does not argue actual innocence and as explicated by the Ninth Circuit,

12CR0236-GPC
19cv493-GPC

"[t]he evidence against Barragan, Franco, and Gutierrez was overwhelming, and they do not argue otherwise." *Barragan*, 871 F.3d at 708. As such, both of Petitioner's *Brady* claims are procedurally barred.

### 2.    Merits of the *Brady* Claims

However, even if both *Brady* claims were not procedurally barred, the two claims would nonetheless fail on the merits. First, for both *Brady* claims, Petitioner has not shown that the evidence would have been favorable to his defense. *See United States v. Agurs*, 427 U.S. 97, 109-10 (2013) (holding that that the mere possibility that undisclosed information might have helped the defense, or might have affected the outcome of the trial, is insufficient to establish materiality for a *Brady* claim). Here, Petitioner only states that the "key pieces of evidence would have either convicted me or proven my innocence in my own words and written in my own hand." (Dkt. No. 2196 at 15.) Petitioner does not provide any showing of how the cell phone evidence, handwritten kites, or the jail cell recordings would have helped the defense. (*See id.*) The mere *possibility* that undisclosed information could potentially have been helpful is not sufficient to prevail on a *Brady* claim. *Agurs*, 427 U.S at 109-10.

Moreover, with respect to the kites and cell phone evidence, Petitioner has not shown that the prosecution suppressed any handwritten notes or photos of the notes because there is no evidence that the prosecutor was in possession of the disputed evidence. *See Sanchez v. United States*, 50 F.3d 1448, 1453 (9th Cir. 1995) (stating that "the government has no obligation to produce information which it does not possess or of which it is unaware."). Mata testified that he occasionally provided notes to the Donovan Prison staff or took a photo of kites with one of multiple smuggled cell phones he had while in custody. (Dkt. No. 1688 at 116-17; 121-23.) Mata further stated that he had two cell phones and has personally used at least ten smuggled cell phones at Donovan State Prison. (*Id.* at 121-23.) When asked how he received these cell phones, Mata stated, "[t]hey would be smuggled

in through various ways, whether it be through stashing, through visiting." (*Id.*) Mata further testified on redirect that he did not keep all his cell phones in his jail cell. (*Id.* at 123.) While Mata's testimony reflects that he used many cell phones at Donovan State Prison, the record reflects that only *one* cell phone was seized. (*See* Dkt. No.1698.) Petitioner's trial counsel, who expressed grave concern for potentially suppressed evidence of kites many times throughout the trial, subsequently traveled to Donovan State Prison at the direction of the court to investigate whether the prison's staff maintained any evidence of physical kites or photos of the kites taken by Mata. (*See* Dkt. No. 1698.) Petitioner also concedes that his trial counsel went to Donovan Prison and found no exculpatory evidence. (Dkt. No. 2195 at 13.) Thus, it reasonably follows that the prosecution was not in possession of the disputed evidence. For the foregoing reasons, the Court DENIES Petitioner's claim with respect to the kites and cell phone evidence because Petitioner failed to demonstrate that the Government suppressed evidence. *See Strickler*, 527 U.S. at 280-81.

Furthermore, with respect to any recordings of in-cell and cross-cell conversations from recording devices placed in Petitioner's jail cell and air vent, (Dkt. No. 2195 at 14-17), Petitioner cannot prevail where he was "aware of the essential facts enabling him to take advantage of any exculpatory evidence." *See United States v. Shaffer*, 789 F.2d 682, 689 (9th Cir. 1986) (internal quotation omitted). Here, the record reflects that the defense knew of the in-cell recordings as Petitioner's trial counsel was the one to bring up the recordings on day eleven of trial during the cross-examination of a detective. (*See* Dkt. No 1395 at 31.) Because the defense could have pursued the recordings, such as by serving a subpoena on the CDCR, there is no due process violation. *See California v. Trombetta*, 467 U.S. 479, 489 (1984) (stating that to meet the constitutional standard of materiality unless the "defendant would be unable to obtain comparable evidence by other reasonably available means."). Therefore, because the defense knew about the in-cell recording

12CR0236-GPC
19cv493-GPC

devices and could have served a subpoena on the CDCR, there is no due process violation with respect to the recording devices. *See Trombetta,* 647 U.S. at 489.

Accordingly, the Court DENIES Petitioner's *Brady* violation claims under § 2255.

## IV.   CERTIFICATE OF APPEALIBILITY

To appeal a district court's denial of a § 2255 petition, a petitioner must obtain a certificate of appealability. 28 U.S.C. § 2253(c)(1)(A). A district court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right." (*Id.* § 2253(c)(2).) To satisfy this standard, the petitioner must show that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Here, Petitioner is not able to make a substantial showing of a denial of a constitutional right. The Court finds that reasonable jurists would not find the Court's assessment of Petitioner's § 2255 claims debatable or wrong. Therefore, because Petitioner has not made a substantial showing of the denial of a constitutional right, the Court declines to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c).

### CONCLUSION

For the foregoing reasons, the Court **DENIES** Petitioner's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255 with prejudice.  The Court also **DENIES** a certificate of appealability.

**IT IS SO ORDERED.**

Dated:  October 22, 2020

Hon. Gonzalo P. Curiel
United States District Judge